## CEMONTE v. UNITED STATES.

### No. 7153.

Circuit Court of Appeals, Sixth Circuit.

April 16, 1937.

Vincent F. McAuliffe, of Detroit, Mich., for appellant.

Fred R. Walker, of Detroit, Mich. (John C. Lehr, of Detroit, Mich., on the brief), for the United States.

Before MOORMAN, SIMONS, and ALLEN, Circuit Judges.

MOORMAN, Circuit Judge.

Cemonte, James Rizzo, and Gaspare Lograsso were convicted of possessing counterfeit Federal Reserve notes with intent to sell them and defraud the United States government. Cemonte appeals, contending that the evidence was not sufficient to submit the question of his guilt to the jury.

Stolarski, an employee of the Secret Service, opened negotiations with Rizzo in August of 1934 for the purchase from him of counterfeit notes. Rizzo stated to Stolarski that he was considering entering into a project to counterfeit coins in another state and wanted to go there immediately, but that he would make arrangements for some one else to deliver the notes. Rizzo did not go away and recommenced ne-

gotiations with Stolarski which continued until September, when the latter, with Zudeck, an informer, went to Rizzo's home to complete the negotiations. Rizzo would not continue them unless he was shown the money he was to be paid. Thereupon Stolarski and Zudeck left to get the money. They returned about two hours later, and while in the act of consummating the deal the three of them were arrested with the counterfeit notes in their possession. Cemonte was sitting in an adjoining room with a revolver in his possession, talking to Rizzo's children, and was also arrested.

With the foregoing facts as a background, the government proved circumstances which it contends are sufficient to support an inference that appellant was Rizzo's accomplice in the possession and intended sale of the notes. One of them concerns a conversation between Rizzo and the appellant in the Moran Cafe, where the appellant was employed as a barkeeper. While Rizzo and Stolarski were discussing the sale of the notes they visited the café with Zudeck and ordered beer. Cemonte served them and, when he was doing so, Rizzo said to him: "Bill, these boys are all right, and you take care of them if I go away." Cemonte nodded his head indicating assent. Shortly after Stolarski and Zudeck left but Rizzo remained. The others are the finding of appellant with a revolver in his possession in the room adjoining that in which the sale was being consummated, and the fact that after he arrived at the house he opened the door into the room where Rizzo and the others were and Rizzo said to him: "It is all right, Bill, close the door."

We think a careful analysis of these circumstances does not justify an inference of appellant's guilt. There was no evidence to show that he had possession of counterfeit notes at any time or that he knew Rizzo had them in his possession. It is true that Rizzo told Stolarski that if he went away he would have some one else deliver the notes, but that statement was not made in the presence of appellant and can be given no weight in determining whether he had knowledge of Rizzo's possession of them. In giving tacit consent in the cafe to Rizzo's request to take care in his absence of Stolarski and Zudeck he did no more than any friendly barkeeper would be reasonably expected to do in the same circumstances. Indeed, such requests are frequently made of barkeepers and salesmen by their friends,

and it would be unreasonable to expect the person to whom the request is made to suppose that assent implied an agreement to do something unlawful. Appellant was employed as a barkeeper in the cafe. Rizzo was a patron, and naturally appellant would assent to his request to look after his friends in his absence. It was reasonable for appellant to believe that Rizzo meant to take care of them and to give them good service when they came in to patronize the bar. His presence in Rizzo's house at the time of the arrest is shown to have been brought about by a request from Rizzo that he come over and bring his revolver. Rizzo said he was afraid he would be "hijacked" when he received the money for the counterfeit notes, and sent a note by his son to the appellant requesting him to come over at once and bring his revolver. Appellant testified that he could not read the note, but Rizzo's son told him what the message was; that the café was in a neighborhood of poor reputation, and he carried a revolver for protection in going home in the early mornings after he had quit work; that his custom was to leave the revolver, when on duty, in the pocket of his outside coat; that when he put on his coat to go over to Rizzo's house he noticed the revolver in the pocket and, in order to conceal it, pushed it down in his belt. There is no evidence to the effect that when he put his head in the room he saw any counterfeit money. His going over to Rizzo's and taking his revolver in obedience to Rizzo's request shows, it seems to us, no more than an apprehension that Rizzo, a friend, was in danger and might need his help. It shows nothing as to his being an accomplice of Rizzo in the possession of counterfeit notes or as to his knowledge that Rizzo possessed them. Rizzo was a law violator and perhaps had a bad reputation, but he was a friend and patron of appellant. It is generally understood to be a part of the code of men engaged in the business appellant was engaged in that they render assistance to a friend in danger of harm or injury. Appellant in no way participated in the negotiations for the sale of the notes. While his presence at Rizzo's house with a revolver and his opening of the door and looking into the room and then retiring upon being told it was all right, to close the door, is ground for suspecting that he knew something was happening or might happen in which Rizzo might need his assistance, it is not enough, in our opinion, to permit of an inference that he was an accomplice or as aider or abettor participated in the commission of the offense.

The judgment is reversed, and the cause remanded, with directions to discharge the appellant.